IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2008

## STATE OF TENNESSEE v. MICHAEL BRAD RAMSEY

**Appeal from the Circuit Court for Maury County**
**No. 16643     Jim T. Hamilton, Judge**

---

**No. M2007-02065-CCA-R3-CD - Filed May 30, 2008**

---

The Defendant, Michael Brad Ramsey, pled guilty to driving under the influence of an intoxicant, second offense. He was sentenced to serve forty-five days and granted work release under Tennessee Code Annotated section 41-2-128(c). Following a motion by the Defendant, the Maury County Circuit Court granted the Defendant permission to leave confinement to attend an educational institution. The State now appeals from the release order. After review, we conclude that the trial court incorrectly determined that it was authorized to grant release for educational purposes to a DUI second offender. The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

John Russell Parkes, Columbia, Tennessee, for the appellant, Michael Brad Ramsey.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; and Mike Bottoms, District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### Factual Background

A Maury County grand jury indicted the Defendant for driving under the influence of an intoxicant (DUI), second offense, and violation of the implied consent law. See Tenn. Code Ann. §§ 55-10-401, -406(a)(3). On August 1, 2007, he pled guilty to DUI, second offense, and the violation of the implied consent law charge was dismissed. He was sentenced to eleven months and twenty-nine days incarceration. Under the terms of the plea agreement, the Defendant was to serve

forty-five days of his sentence,[1] and he was granted work release. See Tenn. Code Ann. § 41-2-128(c).

On August 20, 2007, the Defendant filed a "motion for release from incarceration for educational and work purposes." The Defendant stated in the motion that, as a result of his DUI conviction, he had lost his job with Maury Regional Hospital. He further averred that he was "desirous of enrolling at Columbia State Community College" and requested release for this purpose.

The trial court conducted a hearing on the Defendant's motion on August 23, 2007. At the hearing, the State opposed the motion on the ground that Tennessee Code Annotated section 41-2-128(c) did not authorize the court to grant DUI second offenders release for the purpose of attending an educational institution. After hearing argument, the trial court granted the Defendant's motion.

This appeal followed.

**ANALYSIS**

On appeal, the State again argues that a court does not possess authority under Tennessee Code Annotated section 41-2-128(c) to grant educational release to those convicted of DUI, second offense. Specifically, the State contends that plain language of subsection (c) limits release for DUI second offenders to leave for employment purposes only. The Defendant responds that, under subsection (a) of the statute, participation in a work release program includes leave to attend an educational institution. We agree with the State.

Chapter 2, Title 41 of the Tennessee Code authorizes the establishment of county workhouses and sets forth the conditions under which a county must operate the workhouse. Moreover, Tennessee Code Annotated section 41-2-127 authorizes counties to permit the release of prisoners from workhouses or jails "during reasonable and necessary hours for occupational, scholastic or medical purposes as provided in §§ 41-2-127—41-2-132."

Tennessee Code Annotated section 41-2-128(a), in turn, provides as follows:

[w]henever any person has been sentenced to undergo imprisonment in a county workhouse, hereafter referred to as the "workhouse," for the commission of a crime defined as a misdemeanor by the laws of the state of Tennessee, the county board of commissioners, if there is one, or, otherwise, the judge of the circuit court, criminal court or general sessions court having jurisdiction in the county where the person is imprisoned, upon application made therefore by the warden, superintendent, prison keeper or other administrative head of a workhouse, may, by order, direct the warden, superintendent, prison keeper or other administrative head of a workhouse to permit

---

[1] The mandatory minimum sentence of confinement for second offense DUI violators is forty-five days. Tenn. Code Ann. §§ 55-10-403(a)(1), -50-504(a)(2).

the prisoner to leave the workhouse during necessary and reasonable hours for the purpose of working at the prisoner's employment, conducting the prisoner's own business or other self-employed occupation including, in the case of a woman, housekeeping and attending to the needs of the woman's family, seeking employment, attendance at an educational institution or securing medical treatment. Similarly, the judge of the circuit court, criminal court or general sessions court having jurisdiction in the county where the person is imprisoned may, upon application of the sheriff, enter a like order for the same purpose for jail prisoners. The order may be rescinded or modified at any time with or without notice to the prisoner.

Subsection (c)(1) of Tennessee Code Annotated section 41-2-128 further provides for work release for second-time DUI offenders:

> Notwithstanding the provisions of this section, § 55-10-403(a)(1) or § 55-50-504(a)(2) to the contrary, the judge may sentence persons convicted of a second violation of § 55-10-401 or § 55-50-504(a)(2), to the work release program established pursuant to this section if, prior to doing so, the following conditions have been met:
>
> (A) An investigative report is completed and considered by the judge, with the report confirming the defendant's employment and the employer's willingness to participate in the work release program, including, but not limited to, reports to monitor the defendant's attendance, performance, and response to treatment;
>
> (B) A plan acceptable to the judge is established to provide for the monitoring of the defendant's whereabouts while at or on the defendant's job; and
>
> (C) The defendant agrees to defray, to the best of the defendant's ability, the cost of incarceration and treatment.

Whether the Defendant, a DUI second offender, can be released to attend an educational institution is essentially a matter of statutory interpretation. We begin by noting that when examining a purely legal issue, such as statutory construction, Tennessee appellate courts adhere to a de novo standard with no presumption of correctness as to the lower court's conclusions of law. State v. Collins, 166 S.W.3d 721, 725 (Tenn. 2005) (citing State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004)).

The Tennessee Supreme Court has ruled that "[t]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). With this in mind, the first step in determining legislative intent is to determine

whether the statutory language itself is ambiguous. If it is not, we are limited to the plain meaning of the statutory language.

We are instructed by our highest court to "initially look to the language of the statute itself in determining the intent of the legislature. Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." Browder v. Morrs, 975 S.W.2d 308, 311 (Tenn. 1998) (citing Austin v. Memphis Pub. Co., 655 S.W.2d 146, 148 (Tenn. 1983)). Appellate courts must "assume that the legislature used each word in the statute purposely, and that the use of these words conveys some intent and has a meaning and purpose." Id. (citing Locust v. State, 912 S.W.2d 716, 718 (Tenn. Ct. App. 1995)). Thus, "[w]here the words of the statute are clear and plain and fully express the legislature's intent, there is no room to resort to auxiliary rules of construction, and we need only enforce that statute as written." Id. (citing In re Conservatorship of Clayton, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995) and Roberson v. Univ. of Tennessee, 912 S.W.2d 746, 747 (Tenn. Ct. App. 1995)).

We conclude that the issue presented requires a finding of "legislative intent" that cannot fairly and accurately be construed solely from the language of section 41-2-128. On the one hand, subsection (c) states that a judge may sentence DUI second offenders to the work release program established pursuant to section 41-2-128 providing that certain prerequisites are met. These prerequisites only deal with release for work purposes. On the other hand, the work release program as set out in subsection (a) allows for release of a prisoner to attend an educational institution. Moreover, section 41-2-127 states that release can be for occupational, scholastic, or medical purposes.

Because of the ambiguity, it is necessary to look beyond the words of the statute to the legislative history of the statute. See State v. Strode, 232 S.W.3d 1, 12 (Tenn. 2007). Subsection (c) was added to Tennessee Code Annotated section 41-2-128 in 1990. Our review convinces us that the primary purpose behind the amendment was to permit release of second-offense DUI violators only for the purpose of working.

During a debate in the House of Representatives concerning the passage of the 1990 amendment to the statute, the sponsor of the bill stated that the work release program allows second-time DUI offenders "to go out and work at those jobs with the permission of the court." Tenn. House Session, *Debate on House Bill 1694*, Mar. 19, 1990. When the sponsor was asked if release was solely for employment purposes or whether the prisoner could be released for drug and alcohol treatment pursuant to amendment, the sponsor responded "no representative, this allows him to partake in his normal job, which would be anticipated the normal work hours but then return to his place of incarceration." Id. The representative added that the amendment was "intended to help an individual keep his or her job, to keep families together." Id. At a House Judiciary Committee hearing, the representative stated that this bill gives "a provision for [a second-time DUI offender] to continue with their occupational pursuit." Tenn. House Jud. Comm., *Debate on House Bill 1694*, Mar. 13, 1990.

When the Senate State and Local Government Committee considered the bill, the Senate sponsor stated that the purpose of the bill was to allow offenders "under certain very closely-restricted circumstances[,] to go to their job and to work during the time that they are incarcerated under DUI." Tenn. Senate State and Local Gov't Comm., *Debate on Senate Bill 1870*, Feb. 27, 1990. Committee members added, DUI second offenders needed to "pay their rent," "feed their kids," and pay their bills. Id. Moreover, the criteria for release under this provision was referred to as "stringent" and "strict." Id.; see also Tenn. Senate Session, *Debate on Senate Bill 1870*, Mar. 1, 1990.

Based upon the legislative history, we conclude that our legislature did not intend for the release of DUI second offenders for any purpose other than employment. Here, the Defendant, a second-time violator of the DUI statute, is ineligible for release for educational purposes.

## CONCLUSION

Based upon the foregoing reasoning and authorities, we conclude that a DUI second offender granted work release can only be released from confinement for employment purposes. The order of the trial court permitting the Defendant to be released to attend an educational institution is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
DAVID H. WELLES, JUDGE